[Cite as *Hamm v. Lorain Coal & Dock Co.*, 2022-Ohio-1048.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## BELMONT COUNTY

H. JOSEPH HAMM ET AL.,

Plaintiffs-Appellees,

v.

THE LORAIN COAL & DOCK COMPANY ET AL.,

Defendants-Appellants.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 20 BE 0028**

---

Civil Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 19-CV-17

**BEFORE:**
Gene Donofrio, Carol Ann Robb, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed

---

*Atty. Erik A. Schramm, Sr., Atty. Erik* A. Schramm, *Jr., Atty. Kyle W. Bickford, Atty. John Estadt,* Hanlon, Estadt, McCormick & Schramm Co., LPA, 46457 National Road West, St. Clairsville, Ohio 43950, for Plaintiffs-Appellees and
*Atty. Phillip Kushner, Atty. Michael Hamed, Atty. Brandon Mordue*, Kushner & Hamed Co., LPA, 1375 East Ninth Street, Suite 1930, Cleveland, Ohio 44114, for Defendants-Appellants.

Dated:
March 30, 2022

**Donofrio, J.**

{¶1}    Defendants-appellants, Judith Saunders, Edward N. Saunders V, James Saunders, and Christopher Saunders (the Saunders appellants), appeal from Belmont County Common Pleas Court judgments granting default judgment and summary judgment in favor of plaintiffs-appellees, H. Joseph Hamm, D. Joyce Yazombek, Trustee of the D. Joyce Yazombek Revocable Living Trust, Joseph Hicks Jr., Maxine Hicks, David Ellison, Elizabeth Ellison, Benjamin Taylor, Stephanie Taylor, Donald Lawson Jr., Cheryl Lawson, and Alex Kolb (appellees), on appellees' claim to quiet title to the oil and gas rights underlying approximately 155 acres of property in Belmont County.

{¶2}    This case involves the ownership of the oil and gas underlying approximately 155 acres of property in Belmont County.  Appellees are Belmont County residents who leased their oil and gas mineral estates for development.

{¶3}    On September 24, 1900, Carlos Leatherwood conveyed all "minerals, oil, gas and other substances" underlying the property to American Sheet Steel Company (the Leatherwood Conveyance).  American Sheet Steel Company later changed its name to American Sheet and Tin Plate Company and then merged with the Carnegie-Illinois Steel Corporation.

{¶4}    On December 16, 1937, defendant The Lorain Coal & Dock Company (Lorain Coal) obtained the mineral interest at issue by warranty deed from the Carnegie-Illinois Steel Corporation (the Carnegie Conveyance).  Lorain Coal was founded in part by Edward N. Saunders.

{¶5}    Edward's son Edward Jr. worked for Lorain Coal.  When Edward Jr. died, his will provided that the residue of his estate, which included his shares in Lorain Coal, would be placed in a trust (the ENS Jr. Trust) for the benefit of his descendants, including his son Edward III.  The Saunders appellants are Edward III's heirs.

{¶6}    On August 5, 1963 Lorain Coal filed a certificate of dissolution.  Lorain Coal still held the mineral rights it acquired through the Carnegie Conveyance at the time of its dissolution.  At that time, the ENS Jr. Trust held 2580 common shares of Lorain

Coal. Eventually, the ENS Jr. Trust was terminated. Sometime later, Bonnie Saunders, another one of Edward III's children, assigned her interest in Lorain Coal to the Saunders appellants.

**{¶7}** In 2018, appellees sent the dissolved Lorain Coal certified mail notices of their intent to file an abandonment claim under the 2006 Ohio Dormant Mineral Act (DMA) at its last known address. After non-delivery, on August 21, 2018, appellees published notices of abandonment in the local Belmont County newspaper. Then between September 21, and October 9, 2018, appellees filed affidavits of abandonment with the Belmont County Recorder stating that the mineral interests from the Carnegie Conveyance had been abandoned.

**{¶8}** On October 15 and 16, 2018, defendant Anne Czarniecki assigned a mineral interest to defendant Thunderbird Global Development, LLC, and they both filed claims to preserve claiming to be holders of the severed minerals. Czarniecki claimed to be an heir to Frances Hannay, who Czarniecki said held shares in the Lorain Coal & Dock Company when the company dissolved in 1963. Czarniecki assigned her interest to Thunderbird.[1]

**{¶9}** On January 14, 2019, appellees filed a complaint against Lorain Coal and Lorain Coal's former shareholders, officers, and directors, and the Thunderbird appellants. Appellees asserted claims under the DMA and the Ohio Marketable Title Act (MTA) as well as claims for tortious interference with a contract, tortious interference with a business relationship, slander of title, fraud, waiver, estoppel, laches, and abandonment. Appellees published the complaint in order to obtain service by publication. The Saunders appellants filed their answer and counterclaim on August 30, 2019.

---

[1] The "Thunderbird appellants" who have appealed in Case No. 20-BE-0030 are Thunderbird Global Development, LLC; Christopher E. Banik and Frontier Group, LLC; Anne D. Czarniecki; Anne D. Czarniecki, Trustee of the Helen M. Dixon Irrevocable Trust; Mary Boswell; Mark Boswell; Charlotte Moyler; James Moyler; Constance Reel Johnson; Stanley Bryce Johnson III; Anne Myers; Joseph Myers; Charlotte Kendall; Kelli A. Day; Kelli A. Day, Trustee of the Robert H. Day and Julie A. Day Family Trust; Caroline Lindeke; Albert Lindeke III; Catherine Daubek; Frederick Harold Stinchfield; Cheryl Stinchfield; John Harold Stinchfield; Susan Stinchfield; Jonathan Darrah; Jirapa Darrah; Kathryn Stinchfield; Taylor Saunders Stinchfield; Charles Thomas Stinchfield; Mary Godley; William Harvey Barrett Jr.; Allen Hannay; Deborah Morrison; and Robert Morrison.

{¶10}   On September 13, 2019, appellees filed a motion for default judgment against Lorain Coal, including its former shareholders, officers, directors, and their heirs. On September 17, the trial court granted the motion for default judgment and ordered any right to the oil and gas interest underlying appellees' properties and claimed by Lorain Coal and its former shareholders, officers, directors, and their heirs was terminated and extinguished and title was quieted in favor of appellees. The court found that Lorain Coal and the others had failed to enter an appearance in the lawsuit.

{¶11}   On September 20, 2019, the Saunders appellants filed a motion for summary judgment. Appellees in turn filed a motion for summary judgment.

{¶12}   The Saunders appellants subsequently filed a motion for clarification and relief from judgment. Defendant Thunderbird Global Development filed a motion for reconsideration, correction, and vacation of default judgment. The trial court sustained the motions in part in an October 9, 2019 judgment entry ruling that default judgment would stand but was limited only to non-answering defendants, to cut off any interest they may have, with no effect on the answering defendants.

{¶13}   On October 17, 2019, the trial court entered a nunc pro tunc judgment entry, consented to by all parties. It granted default judgment against Lorain Coal and its former shareholders, officers, and directors and ordered any right to the oil and gas underlying appellees' properties claimed by the above parties was terminated and extinguished and title was quieted in favor of appellees. It also added language that the default judgment did not apply to any answering defendants (including the Saunders appellants) and that the case would continue as to the answering defendants.

{¶14}   The trial court subsequently held a hearing on the summary judgment motions. It then denied the Saunders appellants' motions and granted appellees' motion. The court provided no reasons for its decision. On the Saunders appellants' request, the court later issued a judgment entry stating that any further claims did not involve the Saunders appellants and that they were excused from further proceedings.

{¶15}   After a jury trial on the remaining claims, the trial court entered a judgment of approximately $1.4 million against Thunderbird and later awarded attorney fees to appellees. Appellees subsequently dismissed their claim for punitive damages. Then on

September 15, 2020, the trial court entered a judgment stating that all prior interlocutory orders were now final and there was no just reason for delay.

**{¶16}** The Saunders appellants filed a notice of appeal on October 2, 2020. They now raise two assignments of error.

**{¶17}** The Saunders appellants' first assignment of error states:

> THE TRIAL COURT ERRED BY ISSUING A DEFAULT JUDGMENT AGAINST PARTIES WHOSE RIGHTS WERE PROTECTED BY THE DORMANT MINERAL ACT AND THEN BY REFUSING TO VACATE THAT DEFAULT JUDGMENT.

**{¶18}** In this assignment of error, the Saunders appellants assert the trial court erred in granting default judgment against other parties. They acknowledge the trial court vacated the default judgment against them. Appellees argue the Saunders appellants lack standing to appeal the nunc pro tunc judgment entry.

**{¶19}** The Saunders appellants argue that the trial court erred in granting and refusing to vacate default judgment in light of the alleged timely claim to preserve filed by Czarniecki. They assert the trial court granted default judgment against every defendant without the hearing required by Civ.R. 55(A) and without giving them an opportunity to file an opposition brief.

**{¶20}** But the Saunders appellants go on to acknowledge that, as to them, this issue was resolved by the trial court's granting of their Civ.R. 60(B) motion to vacate the default judgment against them and its nunc pro tunc judgment stating that the default judgment did not apply to answering defendants. (October 17, 2019 Judgment Entry). Nonetheless, they argue that the trial court left in place the default judgment against the non-answering defendants, which they claim is prohibited by the DMA since there was a timely claim to preserve. The Saunders appellants claim they have standing to raise this issue because the trial court's default judgment deprived them of the interest granted to them by Bonnie Saunders, a non-answering defendant.

**{¶21}** In order to have standing, a party, in an individual or representative capacity, has to have some real interest in the action. *Youngstown Edn. Assn. v. Kimble*, 7th Dist. Mahoning Nos. 16 MA 0013, 16 MA 0014, 2016-Ohio-1481, ¶ 12 citing *State ex*

*rel. Dallman v. Court of Common Pleas*, 35 Ohio St.2d 176, 298 N.E.2d 515 (1973). Standing is a jurisdictional requirement. *Fed. Home Loan Mortg. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, ¶ 22.

{¶22} The concept of standing is addressed by Ohio's Rules of Civil Procedure. Civ.R. 17(A) requires that an action be brought "in the name of a real party in interest." This means one who is "directly benefited or injured by the outcome of the case rather than merely having an interest in the action itself." *State ex rel. Sinay v. Sodders*, 80 Ohio St.3d 224, 226, 685 N.E.2d 754 (1997).

{¶23} In this case, on September 17, 2019, the trial court initially issued a default judgment against *all* defendants in this action. It stated that any interest derived from Lorain Coal adverse to appellees' ownership in the disputed mineral interest was extinguished and title was quieted in appellees. The Saunders appellants filed a Civ.R. 60(B) motion for relief from judgment, which the trial court granted. The court issued a nunc pro tunc judgment entry on October 17, 2019. It provided that its order was to have no effect on the answering defendants and that the matter would proceed as to all answering defendants. Thus, the judgment entry quieting title in appellees did not apply to the Saunders appellants and the matter continued as to them (and as to the Thunderbird appellants who also filed a motion for relief from judgment).

{¶24} In their brief, the Saunders appellants admit, "[a]s to the Saunders Appellants directly, those issues arguably were resolved by the trial court's grant of the Rule 60(B) motions, which undid the default judgment as to the answering defendants." (Saunders appellants' brief, p. 17). The Saunders appellants cannot get past the fact that the default judgment did not apply to them. The Saunders appellants do not represent Bonnie Saunders. It was up to her to file an answer to choose to participate in the lawsuit. The Saunders appellants cannot force her, or any other non-answering defendant, to participate in the lawsuit.

{¶25} Thus, the Saunders appellants do not have standing to appeal the default judgment rendered against the non-answering defendants.

{¶26} Accordingly, the Saunders appellants' first assignment of error is without merit and is overruled.

{¶27} The Saunders appellants' second assignment of error states:

THE TRIAL COURT ERRED BY DENYING APPELLANTS'
MOTIONS FOR SUMMARY JUDGMENT AND GRANTING APPELLEES'
MOTION FOR SUMMARY JUDGMENT, ALL WITHOUT SPECIFYING
ANY REASONS FOR THE COURT'S DECISIONS.

**{¶28}** Here, the Saunders appellants assert that the trial court erred in granting summary judgment in favor of appellees based on the DMA and the MTA. The court gave no reasons for its decision. It simply granted summary judgment.

**{¶29}** An appellate court reviews a summary judgment ruling de novo. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper.

**{¶30}** A court may grant summary judgment only when (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) the evidence can only produce a finding that is contrary to the non-moving party. *Mercer v. Halmbacher*, 9th Dist. Summit No. 27799, 2015-Ohio-4167, ¶ 8; Civ.R. 56(C). The initial burden is on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact as to the essential elements of the case with evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**{¶31}** If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts to show that there is a genuine issue of material fact. *Id.*; Civ.R. 56(E). "Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346, 617 N.E.2d 1129 (1993).

**{¶32}** First, the Saunders appellants assert summary judgment was improper under the DMA.

**{¶33}** The DMA provides that "[a]ny mineral interest held by any person, other than the owner of the surface of the lands subject to the interest, shall be deemed abandoned and vested in the owner of the surface of the lands subject to the interest if

the requirements established in division (E) of this section are satisfied" and no savings events occur. R.C. 5301.56(B). "If a holder or a holder's successors or assignees claim that the mineral interest that is the subject of a notice under division (E) of this section has not been abandoned, the holder or the holder's successors or assignees, not later than sixty days after the date on which the notice was served or published, as applicable, shall file" either a claim to preserve or an affidavit in compliance with the statute. R.C. 5301.56(H)(1)(a)(b). A timely claim to preserve by any holder preserves the rights of all holders of a mineral interest in the same land. R.C. 5301.56(C)(2).

{¶34} The Saunders appellants assert the trial court must have found that they are not "holders" within the DMA's definition. Instead, they assert, the court must have found that Lorain Coal was the only holder under the DMA. They disagree. The Saunders appellants assert that Czarniecki, who they assert was also a holder, filed a timely claim to preserve that preserved the rights of all other holders including them.

{¶35} The Saunders appellants argue that after Lorain Coal dissolved in 1963, its assets transferred to its shareholders as a matter of law. They point out that the problem in this case is that Lorain Coal never distributed the mineral rights covered in the Carnegie Conveyance. They note that the statute governing dissolution of corporations in 1963, provided that after paying all obligations, the directors were to distribute the remainder of the assets among the shareholders according to their respective interests. Former R.C. 1701.88(D) (1955). The Saunders appellants note that the current version of the statute now provides for how to handle overlooked corporate assets, but that was not the law at the time Lorain Coal was dissolved.

{¶36} The Saunders appellants go on to argue that even if Lorain Coal still somehow owns the mineral interests, the heirs of the shareholders are still "holders" under the DMA. They claim under this court's case law, they need not be a "record holder" in order to be considered "holders" under the DMA.

{¶37} Thus, they contend that by way of inheritance both they and Czarniecki, who filed the claim to preserve, possess rights that render them holders under the DMA.

{¶38} In response, appellees assert that the trial court properly granted default judgment against non-appearing, non-answering defendants including Lorain Coal and its former shareholders, officers, and directors. They argue that R.C. 1701.88(F) provides

the only mechanism under the law by which a corporation can divest a newly discovered property right. The Carnegie Conveyance, appellees argue, remained a property right of Lorain Coal until title was quieted in their names. They claim that only a member of the board of directors who wound up Lorain Coal in 1963 or a court-appointed receiver could have enforced any right to the Carnegie Conveyance. Moreover, they argue that the Saunders appellants did not inherit any shares of stock because when Lorain Coal dissolved, all shares were turned in or retired by 1969. Pursuant to R.C. 1701.88(F), appellees assert Lorain Coal was the only holder of the Carnegie Conveyance entitled to file a claim to preserve, which obviously it did not.

{¶39} "A corporation in Ohio continues to exist after a certificate of dissolution has been filed and continues to exist until it has been completely liquidated." *Commonwealth Tel. Co. v. Bowers*, 174 Ohio St. 141, 143, 187 N.E.2d 30 (1962). Even years after the articles of incorporation have been cancelled, a corporation can still inherit property. *N. Kenova Dev. Co. v. Wilson*, 4th Dist. Lawrence No. 08CA6, 2008-Ohio-6269, ¶ 21, citing *McFeely v. Gervin*, 5th Dist. Stark No. CA-8382, 1991 WL 200303 (Sept. 23, 1991). The corporation can exist as a de jure corporation for the purpose of winding up corporate affairs. *Id.* A defunct corporation continues on for the purpose of winding up its affairs and consequently can sue or be sued. *Land O'Lakes, Inc. v. Nationwide Tanks, Inc.*, 12th Dist. Butler No. CA2005-11-486, 2006-Ohio-4327, ¶ 40. "'Any claim existing (not yet sued upon) or action or proceeding (already commenced) pending by or against the (dissolved) corporation or (any claim not yet sued upon or action or proceeding) which would have accrued against it (had dissolution not occurred) may be prosecuted to judgment, with right of appeal as in other cases * * *.'" *Id.* at ¶ 39, quoting *Chadwick v. Air Reduction Co.* (N.D.Ohio 1965), 239 F.Supp. 247, 251.

{¶40} The current version of R.C. 1701.88(F) provides:

> If any property right of a corporation is discovered after the winding up of the corporation, any member or members of the board of directors that wound up the affairs of the corporation, or a receiver appointed by the court, may enforce the property right, collect and divide the assets discovered among the persons entitled to those assets, and prosecute actions or proceedings in the corporate name of the corporation.

**{¶41}** In this case, the Saunders appellants could have sought to have the court appoint a receiver to handle proceedings in the name of Lorain Coal. They did not do so.

**{¶42}** The Saunders appellants argue that under the prior version of R.C. 1701.88(D), in effect at the time of Lorain Coal's dissolution, the directors were instructed to distribute the remainder of the company's assets among the shareholders. The problem with this argument, however, is that there is no evidence whatsoever that the directors ever did so in this case. As noted above, there is no evidence of any conveyances of the Carnegie Conveyance from Lorain Coal to anyone.

**{¶43}** Even so, the Saunders appellants argue that the heirs of Lorain Coal's shareholders are still "holders" under the DMA. They argue that Anne Czarniecki was a holder who filed a timely claim to preserve, thereby preserving their rights too.

**{¶44}** Pursuant to the DMA, a "holder" includes "the record holder of a mineral interest, and any person who derives the person's rights from, or has a common source with, the record holder and whose claim does not indicate, expressly or by clear implication, that it is adverse to the interest of the record holder." R.C. 5301.56(A)(1). This court elaborated on the definition of "holder" stating:

> The DMA specifically states a person need not be a record holder to qualify as a holder. A person who has a common source with the record holder (if his claim does not indicate it is adverse to the record holder's interest) is statutorily defined as a holder. Furthermore, a person who derives her rights from the record holder can file a claim to preserve and successfully preserve the mineral interest (if her claim does not indicate it is adverse to the record holder's interest). A person who derives her rights from the record holder is herself a holder under the plain terms of the statute.

*Jefferis Real Estate Oil & Gas Holdings, LLC v. Schaffner Law Offices, L.P.A.*, 7th Dist. Belmont No. 17 BE 0042, 2018-Ohio-3733, ¶ 31.

**{¶45}** The Saunders appellants are correct that although Lorain Coal was the record holder, there could possibly still exist other holders under the DMA. It is irrelevant, however, whether the Saunders appellants themselves were holders since none of them

filed a notice to preserve pursuant to the DMA. Thus, we must examine whether Czarniecki was a holder.

**{¶46}** The only evidence to suggest that Czarniecki was a holder is her own affidavit. Czarniecki averred that her great-grandfather was Edward Johnson, who was one of the owners of Lorain Coal. (Czarniecki Aff. ¶ 1). She further averred that Johnson died in 1936 and that under the residuary clause of his will, his wife (Czarniecki's grandmother), Frances Hannay, inherited a one-third share of Johnson's interest in Lorain Coal. (Czarniecki Aff. ¶ 2). Czarniecki next averred that Hannay died in 1993, leaving her residuary estate to Helen Dixon (Czarniecki's mother). (Czarniecki Aff. ¶ 3). She then averred that Dixon established a trust and a will placing her residual assets into the trust. (Czarniecki Aff. ¶ 5). Czarniecki averred that Dixon died in 2013, and that she is both a trustee of and beneficiary of Dixon's trust. (Czarniecki Aff. ¶¶ 6, 7).

**{¶47}** Several pieces of evidence are missing, however. There is no evidence that Hannay owned stock in Lorain Coal when it was dissolved in 1963. There is no evidence that Hannay owned any stock or mineral interests that had belonged to Lorain Coal at the time she passed away in 1993. There is no evidence that Dixon owned any stock or mineral interests that had belonged to Lorain Coal when she passed away in 2013. And there is no evidence any stock or mineral interests passed to Czarniecki when Dixon passed away. Without some evidence of this purported ownership, the Saunders appellants cannot rely on Czarniecki's notice of preservation to preserve their rights under the DMA.

**{¶48}** Moreover, as appellees point out, there is evidence that when Lorain Coal dissolved, the shareholders returned their shares in order to receive a cash distribution. Therefore, after July 7, 1969, there were no longer any shares of stock in Lorain Coal for anyone to inherit. The shares of Lorain Coal were liquidated by that date and Lorain Coal distributed cash in exchange for the shares of stock. (Defendants Judith M. Saunders, Edward N. Saunders V, James R.K. Saunders, and Christopher Saunders' Responses and Objections to Plaintiffs' First request for Production of Documents, attached as Exhibit C to the Affidavit of Attorney Kyle Bickford, "Eighth & Final Liquidating Distribution").

**{¶49}** Thus, summary judgment was proper under the DMA as no holder filed a claim to preserve.

**{¶50}** Because summary judgment was proper under the DMA, our inquiry ends here. We need not examine the Saunders appellants' MTA argument.

**{¶51}** Finally, the Saunders appellants argue that the trial court erred in granting summary judgment on appellees' miscellaneous claims. Appellees' complaint contained claims for abandonment (count 4), laches (count 5), waiver and estoppel (count 6), tortious interference with contract (count 7), tortious interference with a business relationship (count 8), fraud (count 9), slander of title (count 10), and duplicate declaratory judgment (count 11). With regard to counts seven through ten, the Saunders appellants note that these claims were not asserted against them.

**{¶52}** As pointed out previously, the trial court simply granted appellees' motion for summary judgment and denied the Saunders appellants' motion for summary judgment. It did not rule separately on each claim. Thus, we have no way of knowing how the trial court resolved each of these claims. But none of the claims asserted against the Saunders appellants sought monetary damages. Instead, each of claims 4 through 6 and count 11, sought to quiet title in favor of appellees or declare the notices of preservation void. Thus, all of these claims are rendered moot by the finding that summary judgment in favor of appellees was proper based on the DMA.

**{¶53}** Accordingly, because summary judgment was proper under the DMA, the Saunders appellants' second assignment of error is without merit and is overruled.

**{¶54}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Robb, J., concurs.

D'Apolito, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

### NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**